UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| JACEE WHITE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:20-cv-234-GMB ) |
| ANDREW M. SAUL, Commissioner, Social Security Administration, | ) ) ) |
| Defendant. | ) ) |

# **MEMORANDUM OPINION**

On February 6, 2017, Plaintiff Jacee White filed an application for Supplemental Security Income ("SSI") with an alleged disability onset date of the same day.[1] White's application for benefits was denied at the initial administrative level. She then requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a hearing on April 9, 2019, and denied White's claim on May 8, 2019. White requested a review of the ALJ's decision by the Appeals Council, which declined review on December 23, 2019. As a result, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration (the "Commissioner") as of December 23, 2019.

---

[1] White initially claimed an onset date of December 16, 2015, but she amended her alleged onset date to February 6, 2017. R. 172. The relevant period for White's SSI application begins with the month in which she filed her application and continues through the date of the ALJ's decision. 20 C.F.R. §§ 416.330 & 416.335; *see also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

White's case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Under 28 U.S.C. § 636(c)(1) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the full jurisdiction of a United States Magistrate Judge. Doc. 6. Based on a review of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the decision of the Commissioner is due to be reversed and remanded.

## I. STANDARD OF REVIEW[2]

The court reviews a Social Security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," and "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (citation and internal quotation marks omitted). "Even if the

---

[2] In general, the legal standards are the same whether a claimant seeks disability insurance benefits ("DIB") or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to reference the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in excerpted court decisions.

evidence preponderates against the Secretary's factual findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  Moreover, reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The substantial evidence standard is met "if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)).  The requisite evidentiary showing has been described as "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987).  Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Grant v. Astrue*, 255 F. App'x 374, 375–76 (11th Cir. 2007) (citing *Keeton v. Dep't of Health & Human*

*Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)).  There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II.  STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 416(i).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).  White bears the burden of proving that she is disabled, and she is responsible for producing evidence sufficient to support her claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a).  The Commissioner must determine in sequence:

    (1) Is the claimant presently unable to engage in substantial gainful activity?
    (2) Are the claimant's impairments severe?
    (3) Do the claimant's impairments satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?

(4) Is the claimant unable to perform her former occupation?
(5) Is the claimant unable to perform other work given her residual functional capacity, age, education, and work experience?

*See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015). "An affirmative answer to any of the above questions leads either to the next question, or, [at] steps three and five, to a finding of disability. A negative answer to any question, other than at step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)−(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

## III.  RELEVANT FACTUAL BACKGROUND

White was 18 years old at the alleged onset of disability and 20 years old at the time of the ALJ's decision. R. 17, 18, 156. Her primary complaints are depression, anxiety, ADHD, and autism. R. 42. In her disability report, White alleged autism, ADHD, anxiety, depression, and urinary issues as the medical conditions limiting her ability to work. R. 177.

White completed high school in 2017 and took both special education and

regular classes.[3]  R. 41, 48, 477.  She has never lived independently and instead resides with her mother and stepfather. R. 42.  White has never had a job and has never attempted to find a job. R. 50, 52.  White testified that she does not think she could work as a stocker at Walmart because she would be nervous and distracted and could not talk to anyone. R. 50.  She testified that she would be too distracted to work as a simple assembler. R. 51.

During an average day, White is home alone at times, but her mother and grandmother often take her outside of the home so that she is not left alone. R. 44.  She likes to play computer games, but sometimes cannot concentrate on them. R. 44.  She also likes to draw and plays the ukulele in a small group of musicians. R. 46, 51.  White does not have friends with whom she socializes or talks on the phone, and she does not have any social media accounts. R. 44, 47.

White attends church once per week and sometimes attends musical events with her grandmother. R. 45.  She also goes on vacations with her family, but the traveling makes her nervous. R. 48–50.  White has a driver's permit but no driver's license. R. 46.  She has not tried to get her driver's license because she gets too nervous when she drives. R. 46.

White submitted a number of medical records to the ALJ to support her claim

---

[3] White's mother told Dr. Arnold that it was confusing for White to change classes, so she was restricted to a resource room except for her Spanish class. R. 477.

6

of disability, including a statement from her treating psychologist Dr. Denise Draa. Before making this statement, White had seen Dr. Draa on at least 15 occasions over a 13-month period. R. 495. Dr. Draa described White's anxiety in school.

> She has difficulty with social interactions and does not always fit in with her peers. . . . As a student, she found it extremely difficult to navigate the social nuances of adolescence and as a result had little to no friends. To make matters more difficult, Jaycee experiences much in the way of anxiety that she would often urinate on herself. She described being too scared to use the bathroom and would often sit in wet clothes, until a teacher became aware and sent her to the office to change clothes.

R. 495. Dr. Draa explained that White continued to struggle with her peers and others, and she "finds it difficult to make eye contact, even with those she knows and has expressed concerns about what others think of her." R. 495. She "responds well to older individuals and engages well with peers who are younger or who share similar attributes." R. 495.

Dr. Draa explained some of White's other deficiencies, including her struggles with "organizational skills and staying on task." R. 495. White "also has difficulty understanding social cues and has difficulty pivoting and performing the necessary skills required to perform most routine tasks." R. 495. White is able to follow simple directions. R. 495. Dr. Draa opined that her "symptoms are significant and can cause substantial impairments not only socially, but also in her occupational functioning." R. 495.

Dr. Draa described her treatment of White and offered the opinion that White

7

"has worked on managing her anxiety and her mood more effectively." R. 495. Dr. Draa stated that she continues to work with White "to learn and implement strategies that help her cope with day to day issues and strengthen her quality of life." R. 495. White continues to work on her social skills by attending dance class and playing music. R. 495.

Ultimately, however, Dr. Draa opined that White "may find it difficult to find and sustain employment." R. 495. Dr. Draa acknowledged that White is "capable of many things, such as playing musical instruments, reading to younger children and assisting her mother or grandmother with activities," but she stated that "it is unlikely she will be able to provide for herself independently at this time." R. 495.

The ALJ assigned "little weight" to Dr. Draa's opinion because it was "somewhat inconsistent with other treatment sources" and "not well supported by the record." R. 16. In discounting her opinion, the ALJ specifically noted that White "is able to make trips to Mexico, Jamaica and Hawaii with her extended family" and she "plays musical instruments and attends dance classes." R. 16.

White also underwent a consultative examination with Mary Arnold, Psy.D. on May 27, 2017. R. 477–80. After documenting her personal history, Dr. Arnold reported that White was appropriately dressed and had a compliant demeanor, maintained eye contact, and exhibited conventional behavior. R. 477–78. Dr. Arnold described her mood as "mildly anxious[] with congruent affect" and "some blunting

of affect." R. 478. Dr. Arnold noted that White attends regular outpatient psychiatric counseling. R. 480. Without the benefit of testing, Dr. Arnold estimated her IQ to be in the low average range and stated she has the basic skills to manage funds. R. 478.

In describing White's daily activities, Dr. Arnold noted that she is able to dress herself, grooms herself with prompting, and can be alone at home for a couple of hours because other family members live close by. R. 480. White is dependent on the support of her family for many activities. R. 477, 480. She goes to church, plays the ukulele with her grandmother, and travels with her family. R. 480. Her mother described difficulty or refusal in interacting with her peers, and Dr. Arnold assessed her peer relationships as constricted. R. 478, 480. White enjoys playing with dolls and watching Netflix and YouTube. R. 480.

Dr. Arnold's overall diagnostic impression was anxiety DO, NOS; ADHD; and Mood DO, NOS with a GAF of 54. R. 480. The ALJ assigned Dr. Arnold's opinion "partial weight." R. 16. In assigning this weight, the ALJ noted White's ability to play musical instruments, attend dance class, help her mother and grandmother around the house, and read to children. R. 16.

The ALJ issued his decision on May 8, 2019. R. 18. Under step one of the five-step evaluation process, the ALJ found that White has not been engaged in substantial gainful activity since February 6, 2017. R. 12. The ALJ concluded that

White suffers from the severe impairments of anxiety disorder, ADHD, mood disorder, major depressive disorder, Asberger's, and autism spectrum disorder. R. 12.  He also found that White suffers from the non-severe physical impairments of urinary inconsistence and tachycardia. R. 12–13.  The ALJ noted that her medically determinable impairments significantly limit her ability to perform basic work activities. R. 12.  But the ALJ concluded at step three of the analysis that none of White's impairments satisfied or medically equaled the severity of one of those listed in the applicable regulations. R. 13–14.

Before proceeding to the fourth step, the ALJ determined that White had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following non-exertional limitations:

> [She is] able to understand, remember and apply simple, routine instructions and concentrate and persist for extended periods in order to complete simple routine work tasks with routine supervision; able to maintain superficial work relationships with others; however would be limited to occasional work related contact with the general public; able to adapt to a routine work setting where changes were infrequent and introduced gradually; would need to avoid fast paced work environments with strict quotas and requirements of more than simple limited handwriting due to the claimant's difficulty handwriting.

R. 14.  At the fourth step, the ALJ determined that there are jobs that exist in significant numbers in the national economy White can perform when considering her age, education, work experience (or lack thereof), and RFC. R. 17.  Based on the testimony of the vocational expert ("VE"), the ALJ determined White could perform

the job of a dining room attendant, dishwasher, and motel housekeeper. R. 17–18. Accordingly, the ALJ determined that White has not been under a disability, as defined by the Social Security Act, since February 6, 2017, the date the application was filed. R. 18 (citing 20 C.F.R. § 416.920(g)). Based on these findings, the ALJ denied White's application. R. 18.

## IV. DISCUSSION

White makes three arguments in favor of remand: (1) the ALJ failed to give proper weight to the opinions of the consultative psychologist, Dr. Arnold; (2) the ALJ failed to give proper weight to the opinions of the treating psychologist, Dr. Draa; and (3) the ALJ's reliance on a vocational expert's testimony was in error because it was not based on a correct or full statement of White's limitations and impairments. Doc. 12 at 22–41. The court addresses only the second argument because it warrants reversal and remand.

In assessing medical testimony, "the ALJ must state with some particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Medical opinions are "statements from acceptable medical sources that reflect judgments about the nature and severity of [any] impairment(s), including . . . symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and . . . physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1) & 404.927(a). In determining the

weight given to a claimant's medical opinions, the ALJ may look at several factors: the examining and treatment relationship between the doctor and patient, the supportability of the doctor's opinion, the consistency of the doctor's opinion with the record as a whole, the doctor's specialty, and other relevant factors. 20 C.F.R. §§ 404.1527(c) & 416.927(c).

The opinion of a treating physician who has seen the claimant on a number of occasions should be afforded more weight than the opinion of a doctor who has seen the claimant only once. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004). More weight will be afforded to a physician who has had long enough to form a longitudinal picture of the claimant's impairment, and the more knowledge a treating source has about the patient, the more weight will be given to that doctor's opinion. *Id.* Specifically, a treating physician's opinion "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240–41 (11th Cir. 2004). The ALJ must clearly articulate his or her reasons for rejecting a treating physician's opinion. *Id.* at 1240–41.

Here, Dr. Draa is a treating physician and her opinion is entitled to great weight unless good cause exists for discounting her opinion. White argues that the ALJ failed to show good cause for the assignment of little weight to Dr. Draa's opinions and failed to state with any clarity the reasons for discounting her opinions. The court agrees.

As explained above, the ALJ's reason for assigning little weight to Dr. Draa's opinion was his assessment it was "somewhat inconsistent with the other treating sources and is not well supported by the record. The claimant is able to make trips to Mexico, Jamaica and Hawaii with her extended family. In addition, she plays musical instruments and attends dance classes." R. 16.

On this record, the court cannot conclude that the ALJ fully developed his analysis and assignment of little weight to Dr. Draa's opinion as a treating physician. The stated reasons for discounting her opinion are largely conclusory and do not contain any substantive explanation of the ALJ's reasoning. Such limited discussion prevents the court from performing the required substantial evidence determination. More specifically, the ALJ does not identify the treating sources purportedly inconsistent with Dr. Draa's opinion, explain the inconsistencies, or describe how Dr. Draa's opinion is not supported by the record. This is especially problematic given that the ALJ assigns partial weight to the similar opinion of the consulting psychologist, Dr. Arnold, and discounts her opinion for most of the same reasons.

The only opinion given great weight is that of the state agency psychologist who merely reviewed White's records and did not meet with her in person.

Moreover, while the ALJ was correct to consider White's activities—such as playing the ukulele, attending dance lessons, and going on vacations—the record reflects that the overwhelming majority, if not all,[4] of her activities are facilitated by and involve family members. Although the ALJ recognized this in his description of White's testimony and the doctors' opinions, there is no indication he considered the extent of White's family support in evaluating Dr. Draa's opinion. Additionally, the ALJ failed to explain how family vacationing, attending at dance classes, and playing musical instruments equates with an ability to work.

In sum, the court finds that substantial evidence does not support the ALJ's decision as it relates to the opinion of Dr. Draa. On remand, the ALJ should clarify and explain his analysis of this treating doctor's opinion. The court does not make any findings as to White's other arguments.

## V. CONCLUSION

For the reasons set forth above, the court concludes that the ALJ's determination that White is not disabled is not supported by substantial evidence. The decision of the Commissioner is due to be reversed and remanded for further proceedings, including for further examination, assessment, and evaluation the

---

[4] The record does not reflect whether a family member attends dance lessons with White.

medical opinions.  An appropriate order will be entered separately.

    DONE and ORDERED on May 18, 2021.

                                                             _____
                                                             GRAY M. BORDEN
                                                             UNITED STATES MAGISTRATE JUDGE